**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2497-23

IN THE MATTER OF NEW
JERSEY DEPARTMENT OF
EDUCATION COMPLAINT
INVESTIGATION REPORT
(AMENDED) C2024-6877.

_____

Argued April 15, 2026 – Decided July 31, 2026

Before Judges Currier, Berdote Byrne, and Jablonski.

On appeal from the New Jersey Commissioner of Education, Docket No. C2024-6877.

Elizabeth Athos argued the cause for appellant Education Law Center (Education Law Center, attorneys; Rebecca K. Spar, Cindy Fine, and Elizabeth Athos, on the briefs).

Colin Klika, Deputy Attorney General, argued the cause for respondent New Jersey Department of Education (Jennifer Davenport, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Kevin Milton, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Education Law Center (ELC) appeals from the final agency decision of the Office of Special Education (OSE). ELC brought an investigative complaint to the Department of Education (DOE) alleging certain school districts improperly removed special education students from their legally required "stay put"[1] locations. ELC alleged the removals violated the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1482, and New Jersey law. The OSE, a division of DOE, investigated, found the issues raised were largely not systemic, but agreed there were certain areas where the DOE had not complied with federal statutes and state regulations. In response, it adopted a corrective action plan (CAP).

ELC challenges the OSE's findings and legal conclusions, arguing the final agency decision violates IDEA and New Jersey regulations. ELC also claims the CAP adopted by OSE was arbitrary and capricious. After careful review, we find no reason to disturb the findings of the OSE and affirm.

---

[1] "Stay put" refers to the federal law requirement that a qualifying student receiving special education must remain in the then-current educational placement during the pendency of any special education proceedings, 20 U.S.C. § 1415(j), except as provided by § 1415(k)(4).

A-2497-23

## I.

On December 23, 2023, ELC filed a complaint with OSE seeking an investigation. ELC's complaint raised nine issues. In support of the allegations in its complaint, ELC cited approximately twenty Office of Administrative Law (OAL) decisions pertaining to the specific removal of special education students.

- Issue one alleged the DOE (1) violated its supervisory responsibility pursuant to the IDEA by permitting schools to unilaterally remove students from their current placements without first obtaining orders from an Administrative Law Judge (ALJ), and (2), failed to ensure that changes in the child's placement were limited to forty-five calendar days, as required by 20 U.S.C. § 1415(k)(3).

- Issue two alleged the DOE violated IDEA and state regulations by failing to require school districts to file petitions for an expedited hearing when seeking removal of a student from the student's stay-put placement based on claims of substantial likelihood of injury to the student or others.

- Issue three alleged the DOE violated IDEA by failing to permit a parent or adult student to engage in mediation prior to transmitting

the district's application to change a student's placement based on claims of substantial likelihood of injury to the student or others.

- Issue four alleged the DOE violated its own special education regulations by transmitting a district's emergent relief (ER) application to OAL without affidavits, failing to ensure ALJ findings were supported by evidence, and failing to ensure expert opinions included the expert's qualifications.

- Issue five alleged the DOE violated 20 U.S.C. § 1415(k)(3) and New Jersey regulations by failing to ensure that a school district met its burden of proof by clear and convincing evidence when seeking ER. Also, the DOE allegedly violated 20 U.S.C. § 1415(k)(3) by permitting ALJ decisions regarding ER to rely on an improper interpretation of the factors enumerated in Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982) (the Crowe factors). In addition, the DOE allegedly permitted home instruction as an interim alternative educational setting (IAES), which in some cases violated N.J.A.C. 6A:14-4.8, which provides that home instruction should be ordered only when "all other less restrictive program options have been considered and have been determined inappropriate."

- Issue six alleged the DOE violated 20 U.S.C. § 1415(j) and Third Circuit precedent by improperly utilizing the Crowe factors to determine a child's educational placement.

- Issue seven alleged the DOE failed to ensure determinations of a child's current educational or stay-put placement were made in accordance with IDEA. In particular, the DOE allegedly failed to ensure an IEP in which the district proposed a different placement did not become the student's stay-put placement after a period of time. Also, the DOE allegedly failed to ensure a child's new placement did not become the stay-put placement until the placement was "operative" and "functioning."

- Issue eight alleged the DOE failed to develop a dispute resolution procedure where oral arguments were conducted at a time and place reasonably convenient to parents; to give parents the option to appear by telephone; to give parents notice of when testimony would be taken; to provide parents with written findings of fact and decisions; and, when parents did not appear for oral argument, to add provisions to the order in compliance with N.J.A.C. 1:6A-12.1(d).

A-2497-23

- Issue nine alleged DOE violated IDEA in its oversight responsibility of expedited hearings.

ELC made multiple proposals for revisions to the DOE standards to address the concerns raised in its complaint. For example, ELC proposed changes to the dispute resolution manual and changes to procedures for expedited due process hearings; new written procedures for ER; and revised procedures for determining a student's status during the pendency of a special education due process hearing.

In response to ELC's complaint, OSE investigated and submitted a report of its findings on February 26, 2024. The OSE addressed each of the nine issues raised by ELC in its investigative report. The investigation involved a review of all district filings for fiscal years 2023 and 2024 where a district sought removal of a student with a disability to an IAES. It contained eighty-one findings of fact.

OSE agreed with ELC there were several instances where a district applied for ER without first requesting an expedited due process hearing and OSE was non-compliant in this regard; a CAP with a notice to school districts was the chosen remedy.

6

The OSE did not conclude a CAP was necessary with respect to assigning appropriate burdens of proof or applying proper evidentiary standards because individual ALJ decisions could be appealed if they contained errors. The OSE found it was not proper for the investigative report to review individual ALJ decisions as ALJs are required to be independent, pursuant to IDEA, from the DOE and OSE.

Although there were a few occurrences where children had been removed for more than forty-five days, the OSE did not believe this was a systemic problem. It explained when the forty-five-day period ended there are three options: either the student is returned to his or her current placement; the parties agree to another placement; or an ALJ may extend the removal for an additional forty-five days due to the danger the alternative would pose to the student or others.

The OSE further found there were instances where a student was removed for more than forty-five days, and, at the conclusion of the forty-five-day period, OSE did not follow up on final decisions regarding ER. Also, it agreed ALJ orders had to specify the date on which the forty-five days expires. Thus, OSE agreed with ELC it was non-compliant and corrective action was required. However, it also found the instances cited by ELC represented individual errors,

not systemic problems. In those instances, the parties were entitled to appeal perceived errors made by an ALJ.

With respect to whether ALJs had properly applied the Crowe standards, the OSE again stated it was not appropriate for OSE to review individual decisions because each ALJ decision was subject to appeal. However, it concurred training related to use of the Crowe factors would be beneficial.

Regarding the stay-put rules, OSE again stated the investigative complaint process was not designed to review individual cases so long as the problem was not systemic. Nevertheless, it agreed to reissue guidance related to the stay-put rules applicable during the pendency of the administrative hearings.

In the section of the investigative report entitled "Corrective Action Plan," OSE agreed to train staff from the dispute resolution unit to ensure all requests for ER are accompanied by an affidavit certifying the affiant has personal knowledge of the facts. In addition, OSE agreed to direct OAL to issue a memorandum to staff regarding orders related to removal of a student to an IAES for forty-five days. Those orders should include (a) the requirement the student can be removed for a maximum of forty-five days; (b) the language required by N.J.A.C. 1:6A-12.1 regarding "dissolution or modification" when the respondent parents do not attend the oral argument on ER; (c) the burden of

proof; (d) standard of review; and (e) stay-put protections. Finally, OSE agreed to develop a procedure to review orders to ensure, at the conclusion of the forty-five days, a student would be returned to his or her current placement, the parties would agree to another placement, or the district would apply to extend the removal for another forty-five days.

The report concluded the issues raised were largely individualized and could have been appealed. However, it acknowledged certain areas of noncompliance and adopted a CAP to address those findings.

ELC requested OSE reconsider the findings made in its report, which was denied. Instead, OSE stated the report was a final agency decision. This appeal followed.

II.

To provide context to ELC's allegations, we begin our analysis with a review of the applicable federal statutory provisions and New Jersey regulations. The IDEA governs the provision of special education services to students with disabilities. See 20 U.S.C. §§ 1400-1482. It requires states to ensure each child with a disability receives a free and appropriate public education (FAPE) that addresses their unique needs through development of an individualized educational program (IEP). 20 U.S.C. § 1414(d). The IDEA also requires each

9

state to develop a dispute resolution process for parents to request a due process hearing for disputes involving the IEP or other special education services. Id. § 1415. The regulations implementing the IDEA inform state educational agencies (SEAs), local educational agencies, and interested parties of the legal requirements pertaining to dispute resolution of special education services, including mediation and due process hearings. 34 C.F.R. §§ 300.500-.599.

The DOE established OSE to effectuate the regulations, promulgated as N.J.A.C. 6A:14-1.1 to -10.2, and oversee the state's compliance with the IDEA. All disputes related to special education services are filed with OSE by way of a due process petition. N.J.A.C. 6A:14-2.7(c). A due process hearing is an administrative hearing at the OAL, conducted by an ALJ, regarding a disagreement pertaining to the FAPE of a special education student. See N.J.A.C. 6A:14-2.7(a). When OSE transmits a request for a due process hearing to the OAL for adjudication, the OAL conducts the hearing pursuant to the IDEA, its implementing regulations, and the DOE's Special Education regulations, N.J.A.C. 6A:14-1.1 to -10.2. See N.J.A.C. 1:6A-1.1.

The OAL is subject to New Jersey's regulations implementing the IDEA, as well as the Uniform Administrative Procedure Rules. N.J.A.C. 1:6A-1.1(a); see also N.J.A.C. 1:1-1.1 to -21.6. Once transmitted, the matter is assigned to

10

an ALJ, in accordance with the IDEA's requirement that matters must be heard by an independent hearing officer.  See 20 U.S.C. § 1415(f)(3)(A); N.J.A.C. 6A:14-2.7(a), (j).  Pursuant to the IDEA, hearing officers who conduct special education hearings cannot be employees of the DOE, nor have any personal or professional interest that conflicts with the person's objectivity in the hearing. 20 U.S.C. § 1415(f)(3)(A)(i).

If a parent or school district disagrees with the current special educational services or placement of a student, or if there is reason to believe that maintaining the student's current educational placement presents a danger to the student or others, the party filing a due process petition may request an expedited hearing.  N.J.A.C. 6A:14-2.7(m)-(o).  When a request is made for an expedited hearing, OSE must transmit the case to the OAL for a hearing to be held within twenty school days from the receipt of the request.  N.J.A.C. 6A:14-2.7(o).  The ALJ may order a change in placement for the student to an appropriate interim alternative placement for not more than forty-five calendar days "if the hearing officer determines that maintaining the current placement of such child is substantially likely to result in injury to the child or to others."  20 U.S.C. § 1415(k)(3)(B)(ii)(II); see also N.J.A.C. 6A:14-2.7(n).  A written decision must be provided to the parties within ten school days of the completion of the

11

expedited due process hearing without exceptions or extensions. N.J.A.C. 6A:14-2.7(o)(4).

A district may also remove a student with a disability from the current educational placement to an IAES for up to ten consecutive or cumulative school days in a school year for disciplinary reasons. N.J.A.C. 6A:14-2.8(a). If the removal of a student is longer than ten consecutive school days, or the student is removed for a series of "short-term removals" constituting a pattern that cumulates to more than ten school days in a school year, the removal is considered a change in placement for the student. N.J.A.C. 6A:14-2.8(c). If a parent disagrees with the district's determination the student's behavior was not a manifestation of the student's disability, the parent may also request an expedited hearing. N.J.A.C. 6A:14-2.7(m).

In addition, New Jersey is unique among the states in permitting a party to apply for ER, in addition and distinct from a request for a due process hearing. N.J.A.C. 6A:14-2.7(r). A request for ER must be supported by an affidavit or notarized statement specifying the basis for the request. Ibid. The affidavit supporting an application for ER must be "prepared by an affiant with personal knowledge of the facts contained therein and, if an expert's opinion is included, the affidavit shall specify the expert's qualifications." N.J.A.C. 1:6A-12.1(a).

A-2497-23

However, ER requests are limited to the following: issues involving a break in the delivery of services; issues involving disciplinary action, including manifestation determinations and determinations of interim alternative educational settings; issues concerning interim placement pending the outcome of due process proceedings; and issues involving graduation. N.J.A.C. 6A:14-2.7(r)(1). When the request for ER is made prior to transmittal to the OAL, it must be made to OSE. If the request is made after transmittal, it must be made directly to the OAL. N.J.A.C. 6A:14-2.7(s). Regardless of whether the removal of a student is sought based on dangerousness or discipline pursuant to a due process hearing, or by way of ER, an ALJ cannot order a removal for longer than forty-five calendar days. 20 U.S.C. § 1415(k); see also N.J.A.C. 6A:14-2.8(d); N.J.A.C. 1:6A-12.1(e).

In addition to the process and procedures above, the IDEA also requires a state, specifically the DOE and OSE here, to adopt a complaint procedure. 34 C.F.R. § 300.151. At a minimum, a state's complaint procedure must provide for an investigation, if warranted; an opportunity for the complainant to submit information; a review of all relevant information and an independent determination as to whether a public agency is violating the IDEA; and issuance of a written decision. 34 C.F.R. § 300.152. The DOE must also include

13

procedures for effective implementation of a final decision, if needed, which may include technical assistance, negotiations, and corrective actions to achieve compliance. 34 C.F.R. § 300.152(b). The filing of a complaint utilizing this process is not limited to specific allegations by an individual parent or child; organizations may also file a complaint. 34 C.F.R. § 300.151. If a complaint raises an issue previously decided in a due process hearing involving the same parties, the due process hearing decision remains binding on that issue. 34 C.F.R. § 300.152(c)(2)(i); N.J.A.C. 6A:14-9.2(d)(1).

New Jersey's regulations governing complaint investigation procedures follow the federal regulations. See N.J.A.C. 6A:14-9.2. The State DOE's regulations also require, when warranted, a corrective action plan be issued and include, at a minimum, "objectives, strategies, and activities for correcting each noncompliance item cited, including resources needed to obtain the objectives; and the date by which the noncompliance will be corrected." N.J.A.C. 6A:14-9.2(g). Both the federal and New Jersey regulations require any complaint to allege only violations that occurred "not more than one year prior to the date that the complaint is received." N.J.A.C. 6A:14-9.2(b)(3)(i); 34 C.F.R. § 300.153(c).

A-2497-23

III.

"An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). Our review of an agency's decision considers:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013) (quoting Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995)).]

We must affirm an agency's findings of fact if "supported by adequate, substantial[,] and credible evidence." In re Taylor, 158 N.J. 644, 656 (1999) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Moreover, if we are "satisfied after [our] review that the evidence and the inferences to be drawn therefrom support the agency head's decision, then

15

[we] must affirm even if . . . [we] feel[] that [we] would have reached a different result." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588 (1988).

The burden of demonstrating arbitrary, capricious, or unreasonable action rests upon the party challenging it. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002). We are not bound, however, by an agency's "determination of a strictly legal issue." Russo, 206 N.J. at 27 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). We review its purely legal conclusions de novo. In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020). Moreover, "we are not bound by, nor need we defer to, a state agency's interpretation of federal law." G.C. v. Div. of Med. Assistance & Health Servs., 249 N.J. 20, 45 (2021).

With this statutory and regulatory backdrop in mind, we turn to ELC's contentions. On appeal, ELC's claims: (1) OSE failed to properly supervise its dispute resolution system; (2) removed students in violation of federal law; (3) denied students protections afforded by the IDEA and New Jersey regulations; (4) improperly failed to find that it had not complied with stay-put issues; and (5) adopted an arbitrary capricious and unreasonable CAP.

1.    OSE's Supervisory Function

First, ELC claims neither federal nor state regulations limit OSE's oversight responsibility to only systemic violations of federal law. It contends noncompliance must be addressed even if the DOE complies the majority of the time. Although we agree DOE must address every instance of non-compliance, a solitary instance of non-compliance is adequately addressed by the due process scheme DOE has put in place through OSE, including the ability to appeal an ALJ's individual determination directly to us and, if necessary, the Supreme Court.

OSE is correct the individual determinations made in due process hearings may not be relitigated by way of the complaint resolution process. See 34 C.F.R. § 300.152(c)(2)(i). However, ELC did not seek to reverse individual due process determinations. It instead referred to individual cases in which, according to ELC, the ALJ applied the incorrect legal standards. These cases were presented as evidence of OSE's failure to ensure due process hearings are conducted in accordance with the IDEA. This required oversight is clearly stated in the IDEA. See 20 U.S.C. § 1415(f)(1)(A) (stating SEA is responsible for "conduct[ing]" due process hearings). And although impartial hearing officers are responsible for adjudicating due process hearings, it is the responsibility of the SEA to

ensure hearing officers "possess knowledge of, and the ability to understand" the relevant provisions of the IDEA.  Id. § 1415(f)(3)(A)(ii).  When faced with a complaint, the SEA is required to "[r]eview all relevant information and make an independent determination as to whether the public agency is violating a requirement of . . . the [IDEA]."  34 C.F.R. § 300.152(a)(4) (emphasis added).  The language of that regulation does not foreclose the consideration of individual cases as evidence of non-compliance.  Instead, the regulation directs the SEA to consider "all relevant information."  Ibid.  Thus, we conclude OSE erred in declining to address some ELC's allegations merely because the complaint referred to individual due process decisions.

However, the record does not support ELC's contention that OSE failed to comply with its supervisory responsibility.  Here, the OSE promptly investigated ELC's complaint, found compliance in many of the claims raised, and adopted a CAP to address instances of noncompliance.  We conclude OSE properly exercised its oversight responsibilities with respect to ELC's complaint.

2.    The ER process

ELC takes issue with the ER process, claiming it contradicts the stay-put injunction created by the IDEA.  We note this is not the first time a claim has been made alleging the ER process, unique to New Jersey, is at odds with federal

18

law.  In <u>Baer v. Klagholz</u>, 339 N.J. Super. 168 (App. Div. 2001), appellants there argued the expedited hearing provision of IDEA eliminated the need for an ER standard.  We disagreed, concluding

> [e]mergency relief is an entirely separate category from the expedited-hearing procedures contained in the regulations.  Emergency relief may be requested by either party <u>in addition to</u> a request for an expedited hearing.  Moreover, the emergent decision is a temporary decision until the matter is fully addressed at the expedited due process hearing.  N.J.A.C. 6A:14-2.7(*l*).  The emergency relief process is not redundant to the expedited hearing process, nor does it impermissibly slow the expediated hearing process.
>
> [<u>Id.</u> at 211.]

ELC alleged ALJs were (1) granting relief without a showing of irreparable harm; and (2) placing students in an IAES without first determining whether the IAES was appropriate.  In support of these allegations, ELC referred to eight emergent applications brought by school districts in which students were removed to home instruction.  OSE declined to address these allegations, reasoning, "[i]t is not appropriate for the OSE to review individual decisions through [the complaint] process, or to make findings that an ALJ misapplied the burden of proof or evidentiary standard."

However, with respect to the merits of ELC's claims regarding deficiencies in the emergent application process, we conclude its complaint

19

failed to demonstrate ALJs misapplied the relevant legal standards except in one area. First, ELC's claim that ALJs have been misapplying the irreparable injury prong are belied by the facts of the cases cited in its complaint.

ELC alleges that in several cases students were removed merely for exhibiting disruptive behavior although there was no threat of bodily harm.[2] But in each of the matters cited by ELC, there was proof of a threat of bodily harm. For example, in Haddonfield I, slip op. at 10, the ALJ found a substantial risk of harm to the student or others when the twelve-year-old student was found leaving school and "[r]running into traffic, throwing furniture, and attempting to hit staff." In Middletown, slip op. at 4-5, the student exhibited disruptive behavior but also grabbed a peer by the neck and hit a peer in the groin. In Jackson, slip op. at 2, the three-year-old child exhibited self-injurious behaviors (SIB) that could cause brain damage to himself, and others were injured when trying to help him. In Holland, slip op. at 3, the ALJ found the child was a risk

[2] Haddonfield Borough Bd. of Educ. v. M.L. ex rel. J.N. (Haddonfield I), No. EDS 03372-22 (May 4, 2022); Middletown Twp. Bd. of Educ. v. I.H. ex rel. N.J., No. EDS 02691-23 (Mar. 30, 2023); Jackson Twp. Bd. of Educ. v. A.C. ex rel. S.C., No. EDS 01710-23 (Mar. 8, 2023); Holland Twp. Bd. of Educ. v. S.M. ex rel. L.M., No. EDS 01553-23 (Mar. 22, 2023); Paramus Boro Bd. of Educ. v. J.C. ex rel. N.A., No. EDS 02220-23 (Mar. 29, 2023); Elizabeth City Bd. of Educ. v. D.F. ex rel. M.F. (Elizabeth I), No. EDS 01330-22 (Feb. 24, 2022); Wayne Twp. Bd. of Educ. v. A.R. ex rel. C.G., No. EDS 01492-23 (Mar. 3, 2023).

to himself because he exhibited SIB. In Paramus, slip op. at 3, the student caused injury to another student as well as a security guard, and they each had to seek medical attention. In Elizabeth I, slip op. at 2, the student exhibited SIB and needed to be physically restrained. In Wayne, slip op. at 6, the ALJ found evidence the student had set fire to the bathroom at school, an act that could cause substantial injury to the student or others. There is no merit to ELC's contention the irreparable harm prong has been misapplied. The threat of serious physical injury present in each of those cases is sufficient to demonstrate irreparable harm. See Subcarrier Commc'ns, Inc. v. Day, 299 N.J. Super. 634, 638 (App. Div. 1997) ("[A] preliminary injunction should not be entered except when necessary to prevent substantial, immediate and irreparable harm.").

Second, ELC claims that in deciding emergent applications, ALJs have been removing students to home instruction without deciding whether home instruction is "appropriate" as required by 20 U.S.C. § 1415(k)(3)(B)(ii)(II), which states a hearing officer may "order a change in placement of a child with a disability to an appropriate interim alternative educational setting for not more than [forty-five] school days if the hearing officer determines that maintaining the current placement of such child is substantially likely to result in injury to the child or to others."

These contentions are also without merit. The "temporary order of emergent relief" granted pursuant to N.J.A.C. 6A:14-2.7(r) is distinct from the final order granted after an expedited due process hearing. See N.J.A.C. 6A:14-2.7(o). The purpose of the emergent order is to take immediate curative steps until an ALJ may render a final decision following an expedited due process hearing. See Baer, 339 N.J. Super. at 211 ("[T]he emergent decision is a temporary decision until the matter is fully addressed at the expedited due process hearing."). Following the expedited due process hearing, IDEA allows the hearing officer to remove a student to an "appropriate interim alternative educational setting for not more than 45 school days if the hearing officer determines that maintaining the current placement of such child is substantially likely to result in injury to the child or to others." 20 U.S.C. § 1415(k)(3)(B)(ii)(II) (emphasis added).

By its own terms, § 1415(k)(3)(B)(ii)(II) applies to orders issued after an expedited due process hearing, not to "temporary order[s] of emergent relief" granted pursuant to N.J.A.C. 6A:14-2.7(r). An ALJ is not required to determine whether the interim placement is "appropriate" when issuing an emergent order unless that is the issue raised in the ER application. The final determination is made by the ALJ during the expedited due process hearing. In some of the cases

22

cited by ELC, an appropriate interim alternative placement could not be ascertained by the ALJ during ER because of the parents' refusal to allow the child to participate in evaluations necessary to determine the FAPE.

ELC argued it is a violation of IDEA to force a parent to establish the four Crowe factors when a parent utilizes ER to enforce the child's stay-put rights. In support, ELC cites D.V. ex rel. J.V. v. Fair Lawn Public Schools Board of Education, No. EDS 01320-23 (Mar. 31, 2023) (slip op. at 5-6), and K.Q. ex rel. N.Q. v. Deptford Township Board of Education, No. EDS 02364-23 (Mar. 23, 2023), slip op. at 7-10, where the ALJs there used the Crowe factors in deciding the parents' request for ER to determine whether the child should not be removed. ELC argues the use of the Crowe factors in those situations conflicted with federal law.

We agree the parent of a disabled child does not have to demonstrate the Crowe factors when filing an ER application to enforce a stay-put placement. The stay-put provision of the IDEA is itself an automatic preliminary injunction, and there is no need for parents to prove their entitlement to preliminary injunctive relief. See Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996) ("[IDEA] substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either

a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." (quoting Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir.1982))). Thus, the only demonstration a parent should have to make at the ER stage is: (1) there is a pending proceeding, and (2) the child has been removed from their "then-current educational placement" for behavior they allege was a manifestation of the student's disability.  20 U.S.C. § 1415(j).  "Once a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief [i.e., the Crowe factors]."  Drinker, 78 F.3d at 864 (quoting Woods v. New Jersey Dep't of Educ., No. 93-5123, 20 Indiv.Disabilities Educ.L.Rep. (LRP Publications) 439, 440 (3d Cir. Sept. 17, 1993)).  However, if a parent brings an ER application for something other than enforcing a stay-put placement where they allege the behavior motivating the attempted removal is associated with the child's disability, they would have to meet the Crowe factors.  Likewise, the federal injunction's protection does not apply in cases where a child has not yet been deemed disabled, and the original FAPE placement is at issue.

ELC pointed to two cases in its complaint where the ALJ required the parents to meet the Crowe factors when seeking to enforce stay-put placements.

The OSE agreed this was improper, and additional training on the proper use of the Crowe factors for ALJs was required.

In sum, ELC failed to provide evidence of violations of the IDEA in OSE's adjudication of due process complaints. In the cases cited in its complaint, the ALJs properly applied the standards for ER consistent with New Jersey law and the IDEA. Where they did not, the OSE properly found non-compliance and determined appropriate corrective action. OSE agreed to provide training related to use of the Crowe factors and to re-issue guidance related to the stay-put rules during the pendency of administrative hearings. In short, where the proofs established mistakes were made, OSE agreed to correct them.

3.    The CAP

Finally, ELC argues OSE's CAP is arbitrary and capricious. We disagree. The CAP reasonably met the requirements of N.J.A.C. 6A:14-9.2(g)(1) by noting the "[o]bjectives, strategies, and activities for correcting each noncompliance item cited."

In the section of the investigative report entitled "Corrective Action Plan," OSE agreed to issue a broadcast memorandum to districts and other relevant personnel regarding the procedures for making a request to remove a student to an IAES for forty-five days and to train staff from the dispute resolution unit

that all requests for ER must be accompanied by an affidavit certifying that the affiant has personal knowledge of the facts. With respect to orders related to removal of a student to an IAES for forty-five days, OSE agreed to issue a memorandum to staff that the order must include: (a) the requirement the student can be removed for a maximum of forty-five days; (b) notification that where the respondent parents do not attend an oral argument on ER, the resulting order must include the language required by N.J.A.C. 1:6A-12.1(d) regarding "dissolution or modification;" (c) the burden of proof; (d) standard of review; and (e) stay-put protections. OSE also agreed to develop a procedure to review orders allowing the removal of a student to an IAES for forty-five days at the conclusion of the forty-five days to ensure that a student is either returned to his or her current placement, the parties agree to another placement, or the district files an application to extend the removal for another forty-five days.

Additionally, in the body of the investigative report, OSE noted it would be beneficial to have training regarding "the application of the Crowe factors related to expedited due process hearings seeking removal from a current placement based on a substantial likelihood of injury to self or others." Moreover, the body of the investigative report provided additional information about each area of non-compliance and the activity required to correct it.

The CAP was sufficiently detailed regarding the "[o]bjectives, strategies, and activities for correcting each noncompliance item cited." N.J.A.C. 6A:14-9.2(g)(1). OSE specifically gave examples of what the training would address, such as a notice regarding what was necessary for filing for ER, the contents of affidavits, enforcement of the forty-five-day limit, and the correct application of the Crowe factors, as well as maintenance of stay-put protections during the pendency of proceedings. Even when OSE found there was compliance, it agreed to additional training to ensure that the goals of IDEA were met.

To the extent we have not addressed a specific contention, we conclude it is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

27                                                                A-2497-23